IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JOHN C. WILLIAMS, DONNA B. WILLIAMS, AND NINA BRANTLEY, : : : Plaintiffs, : : v. : : JIM WILLIAMSON and DERRICK NOBLES, : : Defendants. : | Civil Action No. 5:07-CV-186 (CAR) |

### ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Currently before the Court are the Motions for Summary Judgment [Docs. 46 & 63] filed by Defendants Jim Williamson, Sheriff of Telfair County, and Derrick Nobles, an agent of the Oconee County Drug Task Force ("Task Force"). In their Motions, Defendants contend that Plaintiffs' claims of wrongful arrest and selective enforcement of the laws, brought pursuant to 42 U.S.C. § 1983, fail as a matter of law. Plaintiffs filed responses [Docs. 53 and 66] to the Motions, and Defendants thereafter filed a timely reply [Doc. 64]. For the reasons discussed below, the Court finds Defendants are entitled to qualified immunity and hereby **GRANTS** Defendants' Motions.

### SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Johnson

v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). However, not all factual disputes render summary judgment inappropriate. Only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). This means that summary judgment may only be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, this Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). The Court may not make credibility determinations or weigh the evidence. Id. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323. If the moving party discharges this burden, then the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991); see Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan, 932 F.2d at 1577. Summary judgment must be entered when "the

nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

## FACTUAL BACKGROUND

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 claiming Sheriff Williamson and Agent Nobles violated their federal constitutional rights. This lawsuit arises out of Plaintiffs' arrests for manufacturing marijuana after Defendant Nobles and other Task Force agents found marijuana plants growing in the wood-line of the yard just beyond where Plaintiffs were living. Plaintiffs claim their arrests were made without probable cause, and that they were falsely arrested, falsely imprisoned, and maliciously prosecuted, thereby violating their Fourth Amendment rights. Plaintiffs also claim their arrests were made as the result of a racially discriminatory investigation and selective enforcement of the law, thereby depriving them of their equal protection and due process rights under the Fourteenth Amendment. The facts, as viewed in the light most favorable to Plaintiffs, are as follows:

Plaintiffs John C. Williams and Donna B. Williams are husband and wife, and Plaintiff Nina Brantley is Donna's mother and John's mother-in-law. All Plaintiffs are African-American. At all times pertinent to the events herein, Plaintiffs, together with the Williams's three children, resided in a double-wide trailer located in Telfair County, Georgia. Plaintiffs rented the trailer from a family member, Curtis Wooten, who is Plaintiff Brantley's brother (and, thus, the Williams's uncle and uncle by marriage). The trailer was situated on part of a 27 acre tract owned by Plaintiffs' family. The property contains roads and trails, and there is a hunting club that sits adjacent to the property. All family members, not just Plaintiffs, have access to the property, and there is a creek on the property that is also used for swimming and fishing by non-

family members. Plaintiffs resided in the trailer and maintained the backyard, which included mowing the grass. Plaintiffs did not venture into the wooded areas of the property.

On July 29, 2004, a law enforcement unit, the Governor's Task Force, in conjunction with the Oconee County Drug Task Force, conducted a helicopter flyover to search for marijuana plants in Telfair County.[1] When agents in helicopters spot marijuana plants from the air, they inform ground unit agents who then investigate the plants' location. When agents flew over the 27 acres owned by Plaintiffs' family, they spotted marijuana plants growing behind the trailer and additional plants in a nearby field. After spotting the plants, the Governor's Task Force notified Agent Nobles, Georgia Bureau of Investigations agent Dustin Hamby, and other Task Force agents about the discovery of the plants. Once notified, Agent Nobles and the other agents proceeded to the property. When Agent Nobles arrived at the trailer and went into the backyard, he plainly saw two marijuana plants located in the wood-line adjacent to the mowed portion of the backyard. Agent Nobles took photographs of the plants which show that the plants were visible from the back yard of the trailer. The agents also found and photographed fertilizer bags near the two plants. Additionally, the agents found 20 other marijuana plants growing in a nearby field behind the trailer.

When the agents first arrived at the trailer, Nina Brantley was the only one of the Plaintiffs who was home. Ms. Brantley confirmed that she lived in the trailer, but she denied any knowledge of the marijuana plants. She gave consent for the agents to search the trailer. Ten

---

[1] The Oconee Drug Task Force is a multi-jurisdictional drug investigation unit that covers six counties in central Georgia, including Telfair County. Approximately once or twice a year, the Oconee Drug Task Force and the Governor's Task Force conduct these helicopter flyovers to search for marijuana.

4

minutes later, her daughter, Donna Williams, returned home.  Agent Nobles then learned that Donna and her husband, John Williams, also resided in the trailer with Nina.  According to Plaintiffs, Agent Nobles aggressively questioned Donna about the marijuana plants, even threatening to have her children taken away by the Department of Family and Children's Services if she did not tell him about the plants.  Donna began to cry and denied having any knowledge of the marijuana plants.  Agents found no drugs or contraband after searching Plaintiffs' residence.

After the search, Agent Nobles and GBI agent Hamby went outside and loaded the marijuana plants into their vehicles.  The two marijuana plants found behind the trailer were sent to the GBI lab, where they tested positively as marijuana.  The 20 marijuana plants found in the field were turned over to the Telfair County Sheriff's Department to be destroyed.

When John came home that afternoon, his wife and mother-in-law informed him as to the discovery of the marijuana plants.  The next day, John voluntarily went to the Telfair County Sheriff's Department and sought out Agent Nobles.  He told Agent Nobles and another officer that he knew nothing about the marijuana plants.

Approximately one month later, on August 24, 2004, a magistrate judge issued arrest warrants for all three Plaintiffs for manufacturing marijuana based on the two potted marijuana plants Agent Nobles represented were found on the edge of their backyard directly behind the trailer in which Plaintiffs' resided.  Agent Nobles did not attempt to establish probable cause for the arrest of Plaintiffs for the 20 additional marijuana plants discovered in the field behind the property.  No one was arrested for those marijuana plants.

Nina and Donna were informed of the arrest warrants by a friend in law enforcement and

voluntarily turned themselves into authorities. While at the jail, Agent Nobles again questioned Donna about the marijuana plants, and Donna again told him she had no knowledge of the plants. Both Nina and Donna were released on bond approximately two hours later. John, on the other hand, was arrested by Agent Nobles and another deputy from the Telfair County Sheriff's Department in the presence of the warden, deputy warden, and fellow employees of the correctional institution where he was employed. He was released the next day. Plaintiffs maintain that he was terminated from his employment as a result of his arrest.

After their arrest, Plaintiffs spoke with various law enforcement personnel about their alleged wrongful arrest. Plaintiffs contend they went to the Sheriff's Department several times and spoke with Sheriff Williamson who told them he knew those plants did not belong to them.[2] None of Plaintiffs had any history of involvement with drugs, and all three pled not guilty to the charges of manufacturing marijuana. On November 1, 2004, a grand jury indicted each Plaintiff on one count of manufacturing marijuana. After John took a polygraph test the charges against Plaintiffs, however, were ultimately dropped in July 2005. After the charges were dropped, Donna attempted for more than six months to have the charges expunged from her record.

Near the time when the charges against Plaintiff were dropped, in June and July 2005, several local newspaper articles reported that Task Force agents found marijuana plants on tracts of land owned separately by Travis Cook and Hugh Hulett. Both Cook and Hulett are white and were not arrested or prosecuted for the marijuana found on their properties. The articles report that on June 22, 2005, law enforcement discovered 197 marijuana plants among some planted pine trees on Hugh Hulett's hunt club property. Three days later, on June 25, 2005, law

---

[2] Sheriff Williamson denies these allegations.

enforcement discovered 266 marijuana plants on property owned by Travis Cook, one of the largest private landowners in the county. These plants were also found among some planted pine trees. The articles report that the plants discovered on both Hulett's and Cook's properties were found out in the "middle of nowhere" and not near anyone's house. (Pl. Brantley depo., Exs. 6, 7, & 8.) Moreover, the location where the plants were discovered on Hulett's property was "easily accessible and anyone could have done it." (Id., Ex. 8.) Plaintiffs claim this evidence establishes that Plaintiffs' arrests were racially motivated.

Plaintiffs originally brought this action pursuant to 42 U.S.C. § 1983 seeking damages for various claims against Sheriff Williamson, Agent Nobles, and Task Force Commander Todd Lowery. Defendants moved to dismiss Plaintiff's claims, and the Court dismissed all claims against Task Force Commander Lowery and dismissed Plaintiff John Williams's deprivation of liberty claim against the remaining Defendants. The Court, however, allowed the case to proceed on Plaintiffs' Fourth and Fourteenth Amendment claims against Agent Nobles and Sheriff Williamson. Defendants now move for summary judgment on these claims.

## DISCUSSION

Plaintiffs sued both Defendants in their individual capacities alleging that their arrests on charges of manufacturing marijuana were made without probable cause, thereby violating their Fourth Amendment rights, and that their arrests were made as a result of a racially discriminatory investigation and selective enforcement of the law based on their race, thereby depriving them of their equal protection and due process rights under the Fourteenth Amendment. Plaintiffs also allege claims for false arrest, false imprisonment, and malicious prosecution. Defendants contend they are entitled to judgment as a matter of law as Plaintiffs can create no genuine issue of material fact on

their claims. The Court agrees.

*Qualified Immunity*

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit. Pearson v. Callahan, 555 U.S. ___, 129 S.Ct. 808, 815 (2009) (citation omitted). To invoke qualified immunity the official must first prove that he was acting within his discretionary authority, and then the burden shifts to the plaintiff to overcome the defense of qualified immunity. Id. To do so, the plaintiff must prove: (1) that the officer violated a constitutional right and (2) that this right was clearly established at the time. See Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009). Courts now have discretion to determine in what order we analyze the two prongs of the plaintiff's burden of proof. Pearson, 555 U.S. ___, 129 S.Ct. at 818-19 (Courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case hand."). Here, it is undisputed that both Agent Nobles and Sheriff Williamson were acting within the scope of their discretionary authority.

*Fourth Amendment Claims*

Plaintiffs first assert that they were arrested without probable cause in violation of the Fourth Amendment. While a warrantless arrest without probable cause violates the Constitution and provides a basis for a 42 U.S.C. § 1983 claim, the existence of probable cause at the time of

8

the arrest constitutes an absolute bar to a § 1983 claim for false arrest. Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990). "If no constitutional rights would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Under a qualified immunity analysis, probable cause to arrest may be actual probable cause or arguable probable cause. See Eslinger, 555 F.3d at 1327 ("Absent probable cause, an officer is still entitled to qualified immunity if arguable probable cause existed."). Actual "[p]robable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Id. at 1327 (quoting United States v. Gonzales, 969 F.2d 999, 1002 (11th Cir. 1992)). "Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information, and probable cause must be judged not with clinical detachment but with a common sense view to the realities of normal life." Marx, 905 F.2d at 1505-06 (internal quotation marks and citations omitted). The evidence of criminal activity need not be overwhelming. Eslinger, 555 F.3d at 1327. "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. (quotation marks, brackets, and citation omitted). When determining the validity of an arrest, "[t]hat a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence . . . ." Marx, 905 F.2d at 1507. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendants could have believed that probable cause existed to arrest." Eslinger, 555 F.3d at 1327 (internal quotation marks and citations omitted).

      Whether a particular set of facts gives rise to actual probable cause or arguable probable

cause for an arrest depends on the elements of the crime. Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). Plaintiffs were arrested and charged with Manufacturing Marijuana. Under Georgia law, "[i]t is unlawful for any person to possess, have under his control, manufacture, deliver, distribute, dispense, administer, purchase, sell, or possess with intent to distribute marijuana." O.C.G.A. § 16-13-30(j)(1). Georgia law makes clear that this code section applies to the cultivation or planting of marijuana. State v. Hunt, 201 Ga. App. 327, 328 (1991) (The statutory definition of "manufacture" establishes that "this code section [O.C.G.A. § 16-13-30(j)(1)] applies by its express terms to the cultivation or planting of marijuana.").

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds no constitutional violation existed at the time of the arrests because Agent Nobles had actual probable cause to arrest Plaintiffs. The evidence establishes that the two marijuana plants for which Plaintiffs were arrested were located in close proximity to the trailer where they lived, in an area they maintained and controlled. The plants were found in the brush or wood-line directly adjacent to the groomed portion of Plaintiffs' back yard that John mowed. Plaintiff Brantley confirms that the two plants were "sitting adjacent to the backyard." (Pl. Brantley depo., p. 24.) The plants were located directly behind the trailer and were visible from both inside the trailer looking out into the backyard and from the back porch. Agent Nobles stated that he plainly saw the marijuana plants when he was standing in the backyard and from the back porch. (Nobles depo, p. 30.) GBI agent Hamby also confirms that the two marijuana plants "were visible as one would stand inside the residence or looking out the window at the backyard, you could see the plants from the residence." (Hamby depo., 9.) The copies of the photographs further show that the marijuana plants were located at the edge of the backyard directly adjacent to the mowed

area maintained by Plaintiffs and were plainly visible from the backyard. Fertilizer was found and photographed near the plants, indicating that the plants were being cultivated. Moreover, before seeking an arrest warrant, Agent Nobles confirmed that all three Plaintiffs lived in the trailer. Thus, from these facts, Agent Nobles had sufficient knowledge to form a reasonable belief that Plaintiffs were manufacturing marijuana as defined under Georgia law. This is not a situation where agents found marijuana plants in a remote wooded area or an open field.

Even if actual probable cause did not exist, Agent Nobles certainly had arguable probable cause to arrest Plaintiffs. A reasonable officer in Nobles' position could have believed that he had probable cause to arrest Plaintiffs in relation to that marijuana. This is clearly evidenced by the testimony of other agents and officers who agreed that Agent Nobles had probable cause to arrest Plaintiffs based on the location of the marijuana plants being directly adjacent to the backyard and visible from the trailer. Deputy John Merritt, a deputy with the Telfair County Sheriff's Department who booked John Williams into the Telfair County jail, stated that he discussed the arrest with Sheriff Williamson. He stated that the "proximity of the plants to the property line right there at the trailer was justification for the arrest." (Merritt depo., p. 21.) Likewise, Luke Kicklighter, who was a Task Force agent at all times pertinent to the events in this case, also stated that "[i]f there is marijuana growing in someone's backyard and is in clear visibility, yes, I would arrest the homeowner." (Kicklighter depo., p. 26.)

Because Agent Nobles had probable cause to arrest Plaintiffs for manufacturing marijuana, Plaintiffs have not suffered a Fourth Amendment violation. Thus, Plaintiffs have no claim against Sheriff Williamson, and the existence of probable cause also defeats Plaintiffs' false imprisonment and malicious prosecution claims. See Ortega v. Christian, 85 F.3d 1521,

1526 (11th Cir. 1996) (absence of probable cause is a required element of section 1983 false imprisonment claim); Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) (probable cause bars section 1983 malicious prosecution claim).

*Fourteenth Amendment Claims*

Plaintiffs also claim that their arrests were the result of selective enforcement of the laws based on their race in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment "prohibits selective enforcement of the law based on considerations such as race." Whren v. U.S., 517 U.S. 806, 813 (1996). To prevail on their selective enforcement claims, Plaintiffs must present evidence that individuals of a different race could have been arrested for the same crime but were not. Swint v. City of Wadley, Ala., 51 F.3d 988, 1000 (11th Cir. 1995). Here, Plaintiffs contend that Defendants did not arrest white landowners when marijuana plants were found on their land.

As an initial matter, the Court must address the admissibility of the evidence attached to Plaintiffs' brief in opposition to Defendant Nobles' motion for summary judgment. Throughout discovery, Plaintiffs relied only on the two incidents regarding the discovery of marijuana plants and non-arrests of white landowners Hugh Hulett and Travis that had been reported in the local newspaper to support their selective enforcement claims. Discovery in this case closed on November 30, 2008. Thereafter, Agent Nobles moved for summary judgment. In responding to Nobles's motion for summary judgment, Plaintiffs for the first time attached additional documents allegedly supporting their selective enforcement claims. These documents come from the Oconee Drug Task Force and concern nine additional incidents where Task Force agents conducted investigations after discovering marijuana plants. Defendants object to these

exhibits and argue they should be excluded from consideration based on Plaintiffs' failure to disclose the evidence during discovery as well as a violation of the hearsay rule. The Court agrees.

>Rule 26(e)(1) governs supplementing disclosures and responses. Under Rule 26(e)(1),
>
>>[a] party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e). This rule "imposes a duty on parties to supplement or correct a disclosure or response made under Rule 26(a) to include after-acquired information." King v. Kennesaw State Univ., 2007 WL 2713252, *8 (N.D. Ga. 2007). Rule 37(c)(1) provides, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or 26(3), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial," unless the failure is harmless. Fed. R. Civ. P. 37(c)(1).

Here, exclusion of the evidence is an appropriate sanction for Plaintiffs' failure to disclose the additional evidence during discovery. Since this case was filed in May 2007, Plaintiffs have solely relied on the incidents described in two newspaper articles reporting the non-arrests of Travis Cook and Hugh Hulett to establish their selective enforcement claims. When asked in document requests and interrogatories to produce all documents supporting their allegations, Plaintiffs failed to disclose any additional evidence and continually responded that they had "no information other than that which was mentioned in the Complaint and the affidavits submitted in response to Defendant's various motions." (Pl's Responses to Nobles'

13

First Interrogatories and Complaint.)  Plaintiffs did not identify the additional incidents in their initial disclosures, nor did they identify them at their depositions.  It was not until early 2009, after discovery had closed and dispositive motions had been filed, that Plaintiffs filed the additional documents allegedly supporting their claims.  Plaintiffs' attempts to justify their failure to disclose these documents fail,[3] and the evidence will not be considered by this Court.

Having excluded the additional evidence, the Court now addresses Plaintiffs' selective enforcement claims based on the two incidents reported in the local newspaper articles from the Summer of 2005 in which law enforcement discovered marijuana plants on Hugh Hulett's and Travis Cook's properties.   Plaintiffs claim because both were white men and neither were arrested for manufacturing marijuana, these incidents prove that law enforcement unlawfully enforced the laws against Plaintiffs based on their race.  The Court, however, disagrees and finds Defendants are entitled to judgment as a matter of law on these claims as well.

First, these two incidents cannot establish that Agent Nobles selectively enforced the laws based on race because he was no longer a Task Force agent at the time the marijuana plants were found on the Hulett and Cook properties.  Nobles left the Task Force in late January or early February of 2005, some four or five months before the marijuana plants were discovered in June or July of 2005.  When Nobles left the Task Force, he went to work at Hartsfield International Airport and had no further involvement in drug investigations with the Task Force.  Therefore, he could not have participated in the discovery of marijuana or in the decision

---

[3] The Court notes, that even if it were to consider the additional incidents, the incidents do not create an issue of fact on Plaintiffs' selective enforcement claims.  In fact, the relevant documents actually support Defendants' position that Plaintiffs were not selectively prosecuted based on their race, showing instances where whites in substantially similar circumstances to Plaintiffs were, in fact, arrested.

14

whether to press charges.

Moreover, Plaintiffs have not carried their burden of establishing a selective enforcement claim as a matter of law.  To establish a claim for selective enforcement under the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs must demonstrate: (1) that they were treated differently and less favorably than other similarly situated individuals, and (2) that Defendants unequally applied an ordinance or code provision for the specific purpose of intentionally discriminating against them.  See Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006). Thus, Plaintiffs must prove that a similarly situated individual was treated better.  See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189 (11th Cir. 2007).  "The reason that there is a 'similarly situated' requirement in the first place is that at their heart, equal protections claims . . . are basically claims of discrimination. To maintain this focus on discrimination and to avoid constitutionalizing every state regulatory dispute, we are obliged to apply the 'similarly situated' requirement with vigor."  Id. at 1207 (citation omitted).

Even if the Court assumes that the newspaper articles are admissible and do not contain inadmissible hearsay, these incidents are dissimilar to Plaintiffs' situation.  The marijuana plants on both properties were found "in the middle of nowhere," and were not near anyone's house or residence.  This is in stark contrast to the two plants found in close proximity to Plaintiffs' trailer, which could plainly be seen from their back porch.  The plants on Cook's property were found on a large tract of land, not on the edge of his backyard.  Johnny Smith, a deputy with the Telfair County Sheriff's Department who was involved in investigating the marijuana on Cook's property, testified that there was no way to tie the grower of the plants to Cook or anyone else. (Smith Depo., pp. 24, 41, 46.)  As for the plants found on Hulett's property, Deputy E.T.

Fletcher with the Telfair County Sheriff's Department recalled that the plants had not been cared for in quite a while, and there was no evidence to connect the plants to a certain individual. (Fletcher Depo., pp. 7-8.)  Moreover, in the newspaper article, a Task Force agent stated that the area where the plants were found on Hulett's property "is easily accessible and anyone could have done it."  In contrast, the two marijuana plants for which Plaintiffs were arrested were found directly behind their residence, on the edge of their backyard in an area they maintained and controlled, and in plain view from the back of the trailer.   Thus, Plaintiffs have failed to identify a similarly situated person that was not arrested by Defendants when marijuana plants were found under similar circumstances, and therefore Defendants are entitled to judgment as a matter of law on Plaintiffs' selective enforcement claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment [Docs.46 & 63] are **GRANTED**.

SO ORDERED this 11th day of September, 2009.


                                            S/ C. Ashley Royal
                                            C. ASHLEY ROYAL
                                            United States District Judge

SSH